No. A–453. GILMORE v. UTAH. On October 7, 1976, Gary Mark Gilmore was convicted of murder and sentenced to death by a judgment entered after a jury trial in a Utah court. On December 3, 1976 [*ante*, p. 989], this Court granted an application for a stay of execution of the judgment and sentence, pending the filing here by the State of Utah of a response to the application together with transcripts of various specified hearings in the Utah courts and Board of Pardons,

and until "further action of the Court on the application for stay."

The State of Utah has now filed its response and has substantially complied with the Court's request for transcripts of the specified hearings. After carefully examining the materials submitted by the State of Utah, the Court is convinced that Gary Mark Gilmore made a knowing and intelligent waiver of any and all federal rights he might have asserted after the Utah trial court's sentence was imposed, and, specifically, that the State's determinations of his competence knowingly and intelligently to waive any and all such rights were firmly grounded.

Accordingly, the stay of execution granted on December 3, 1976, is hereby terminated.

MR. CHIEF JUSTICE BURGER, with whom MR. JUSTICE POWELL joins, concurring.

On December 2, 1976, Bessie Gilmore, claiming to act as "next friend" on behalf of her son, Gary Mark Gilmore, filed with this Court an application for a stay of execution of the death sentence then scheduled for December 6, 1976.[1] Since only a limited record was then before the Court, we granted a temporary stay of execution on December 3, 1976,[2] in order to secure a response from the State of Utah. That response was received on December 7, 1976. On December 8, 1976, a response was filed by Gary Mark Gilmore, by and

---

[1] This case may be unique in the annals of the Court. Not only does Gary Mark Gilmore request no relief himself, but on the contrary he has expressly and repeatedly stated since his conviction in the Utah courts that he had received a fair trial and had been well treated by the Utah authorities. Nor does he claim to be innocent of the crime for which he was convicted. Indeed, his only complaint against Utah or its judicial process, including that raised in the state habeas corpus petition mentioned in n. 4, *infra*, has been with respect to the delay on the part of the State in carrying out the sentence.

[2] THE CHIEF JUSTICE, MR. JUSTICE REHNQUIST, and MR. JUSTICE STEVENS dissented from issuance of the stay.

through his attorneys of record, Ronald R. Stanger and Robert L. Moody, challenging the standing of Bessie Gilmore to initiate any proceedings in his behalf.

When the application for a stay was initially filed on December 2, a serious question was presented as to whether Bessie Gilmore had standing to seek the requested relief or any relief from this Court. Assuming the Court would otherwise have jurisdiction with respect to a "next friend" application, that jurisdiction would arise only if it were demonstrated that Gary Mark Gilmore is unable to seek relief in his own behalf. See *Rosenberg* v. *United States,* 346 U. S. 273, 291 (1953) (separate opinion of Jackson, J., joined by five Members of the Court). However, in view of Gary Mark Gilmore's response on December 8, 1976, it is now clear that the "next friend" concept is wholly inapplicable to this case. Since Gary Mark Gilmore has now filed a response and appeared in his own behalf, through his retained attorneys, any basis for the standing of Bessie Gilmore to seek relief in his behalf is necessarily eliminated. The only possible exception to this conclusion would be if the record suggested, despite the representations of Gary Mark Gilmore's attorneys, that he was incompetent to waive his right of appeal under state law and was at the present time incompetent to assert rights or to challenge Bessie Gilmore's standing to assert rights in his behalf as "next friend." [3]

After examining with care the pertinent portions of the transcripts and reports of state proceedings, and the response of Gary Mark Gilmore filed on December 8, I am in complete agreement with the conclusion expressed in the Court's order that Gary Mark Gilmore knowingly and intelligently,

---

[3] When Bessie Gilmore's application for a stay first came before the Court, we did not have before us for consideration transcripts of the various hearings at which Gary Mark Gilmore was said to have waived his federal constitutional rights. As today's order makes clear, each Justice has now had an opportunity to review the relevant transcripts and reports concerning mental competence and waiver.

with full knowledge of his right to seek an appeal in the Utah Supreme Court, has waived that right.[4] I further agree that the State's determinations of his competence to waive his rights knowingly and intelligently were firmly grounded.[5]

---

[4] At a hearing on November 1, 1976, on a motion for a new trial, Gilmore's attorneys informed the trial court that they had been told by Gilmore not to file an appeal and not to seek a stay of execution of sentence on his behalf. They also informed the trial court that they had advised Gilmore of his right to appeal, that they believed there were substantial grounds for appeal, that the constitutionality of the Utah death penalty statute had not yet been reviewed by either the Utah Supreme Court or the United States Supreme Court, and that in their view there was a chance that the statute would eventually be held unconstitutional. The trial court itself advised Gilmore that he had a right to appeal, that the constitutional issue had not yet been resolved, and that both counsel for the State and Gilmore's own counsel would attempt to expedite an appeal to avoid unnecessary delay. Gilmore stated that he did not "care to languish in prison for another day," that the decision was his own, and that he had not made the decision as a result of the influence of drugs or alcohol or as a result of the way he was treated in prison. On November 4, the state trial court concluded that Gilmore fully understood his right to appeal and the consequences of a decision not to appeal.

On November 10, the Utah Supreme Court held a hearing on the Utah Attorney General's motion to vacate a stay of execution of sentence entered two days earlier by that court. Gilmore was present, and, in response to questions from several justices, stated that he thought he had received a fair trial and a proper sentence, that he opposed any appeal in the case, and that he wished to withdraw an appeal previously filed without his consent by appointed trial counsel.

Finally, at a hearing before the trial court on December 1, Gilmore again informed the court that he opposed all appeals that had been filed.

[5] In the pretrial period, from August 6 to October 6, 1976, the trial court appointed psychiatrists to examine Gilmore on two occasions, to determine his competency to stand trial and his sanity at the time of the offense. Three of the five psychiatrists who examined Gilmore in that period found no evidence of mental illness or insanity. The record before us does not include the findings of the other two psychiatrists,

1016

When the record establishing a knowing and intelligent waiver of Gary Mark Gilmore's right to seek appellate review is combined with the December 8 written response submitted to this Court,[6] it is plain that the Court is without jurisdiction to entertain the "next friend" application filed by Bessie Gilmore. This Court has jurisdiction pursuant to Art. III of the Constitution only over "cases and controversies," and we can issue stays only in aid of our jurisdiction. 28 U. S. C. §§ 1651, 2101 (f). There is no dispute, presently before us, between Gary Mark Gilmore and the State of Utah, and the application of Bessie Gilmore manifestly

which were presented to the trial court when it concluded that Gilmore was sane for the purpose of standing trial.

After trial, at the November 1 hearing, the state trial court ordered *sua sponte* that the Utah State Prison Psychiatrist, or other available psychiatric personnel of the prison, examine Gilmore to determine his ability to decide not to appeal. In the order, the court noted that Gilmore had instructed his attorneys not to appeal after they had informed him that there was substantial legal merit to such an appeal. On November 3 the Prison Psychiatrist submitted a report, based on a one-hour psychiatric interview and a review of Gilmore's medical records, concluding that Gilmore's decision to waive appeal was the "product of an organized thought process" and that Gilmore had not "become 'insane' or mentally ill." On the same day, two prison psychologists submitted a second report, based on psychological tests and an individual interview, concluding that "[Gilmore] presently has the mental capacity and emotional stability to make the necessary decisions concerning his sentence and to understand the consequences."

Gilmore apparently attempted to take his own life on November 16. The Prison Psychiatrist subsequently reported to the Board of Pardons that Gilmore's mental state on November 24 was "exactly as described" in the psychiatrist's report to the court on November 3.

[6] On December 8, 1976, Gilmore, by counsel, advised this Court of the filing of a petition in a Utah state court seeking habeas corpus relief. Although that petition is not in the papers before us, it is understood that the ground relied upon is not the deprivation of any constitutional right but that there is a 60-day limitation under Utah law upon the carrying out of the sentence of death, an issue which has not been presented to the Utah Supreme Court as of this date.

fails to meet the statutory requirements to invoke this Court's power to review the action of the Supreme Court of Utah. No authority to the contrary has been brought to our attention, and nothing suggested in dissent bears on the threshold question of jurisdiction.

In his dissenting opinion, MR. JUSTICE WHITE suggests that Gary Mark Gilmore is "unable" as a matter of law to waive the right to state appellate review.[7] Whatever may be said as to the merits of this suggestion, the question simply is not before us. Gilmore, duly found to be competent by the Utah courts, has had available meaningful access to this Court and has declined expressly to assert any claim here other than his explicit repudiation of Bessie Gilmore's effort to speak for him as next friend. It follows, therefore, that the Court is without jurisdiction to consider the question posed by the dissent.

MR. JUSTICE STEVENS, with whom MR. JUSTICE REHNQUIST joins, concurring.

In my judgment the record not only supports the conclusion that Gilmore was competent to waive his right to appeal, but also makes it clear that his access to the courts is entirely unimpeded and therefore a third party has no standing to litigate an Eighth Amendment claim—or indeed any other claim—on his behalf. Without a proper litigant before it, this Court is without power to stay the execution.

MR. JUSTICE WHITE, joined by MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL, dissenting.

As Justice Wilkins said in dissent below,[1] there are sub-

---

[7] MR. JUSTICE WHITE's dissent expresses the view that absent an affirmative decision by "the state courts" as to the validity of Utah's capital punishment statute, "the imposition of the death penalty in this case should be stayed." However, Gilmore has not challenged the validity of the statute under which he was convicted, and there is no other party before this Court with requisite standing to do so.

[1] Prior to Gilmore's seeming waiver, the trial judge also appeared ready

stantial questions under *Furman* v. *Georgia,* 408 U. S. 238 (1972), about the constitutionality of the Utah death penalty statute. Because of Gary Gilmore's purported waiver of his right to challenge the statute, none of these questions was resolved in the Utah courts. I believe, however, that the consent of a convicted defendant in a criminal case does not privilege a State to impose a punishment otherwise forbidden by the Eighth Amendment.[2] Until the state courts have resolved the obvious, serious doubts about the validity of the state statute, the imposition of the death penalty in this case should be stayed.

Given the inability of Gary Gilmore to waive resolution in the state courts of the serious questions concerning the constitutional legality of his death sentence, there is no jurisdictional barrier to addressing the question upon the application of the defendant's mother. See *Rosenberg* v. *United States,* 346 U. S. 273, 291 (1953) (separate opinion of Jackson, J.). Without examining the constitutionality of the Utah death statute, on November 10, 1976, the Utah Supreme Court vacated its stay of Gilmore's sentence and dismissed the appeal which his then attorneys had filed on his behalf.

Pending the filing of a timely petition for certiorari, I would continue the stay previously issued by this Court; and upon said filing it would appear that the judgment of the Supreme Court of Utah should be vacated and the case remanded to the state courts for reconsideration in the light of the death penalty decisions announced by this Court

---

to certify an appeal in order that the State Supreme Court could pass on the issue of the validity of the death penalty statute, an issue he had not himself addressed.

[2] Nor in the absence of a state-court decision sustaining the death penalty statute would a purported waiver of the Eighth Amendment necessarily be a defense to a wrongful-death action, see Utah Code Ann. § 78–11–7 (1953), based on an execution imposed under an unconstitutional statute.

last Term. Cf. *Collins* v. *Arkansas, ante,* p. 808; *Neal* v. *Arkansas, ante,* p. 808.

MR. JUSTICE MARSHALL, dissenting.

I fully agree with my Brother WHITE that a criminal defendant has no power to agree to be executed under an unconstitutional statute. I believe that the Eighth Amendment not only protects the right of individuals not to be victims of cruel and unusual punishment, but that it also expresses a fundamental interest of society in ensuring that state authority is not used to administer barbaric punishments. Irrespective of this, however, I cannot agree with the view expressed by THE CHIEF JUSTICE that Gilmore has competently, knowingly, and intelligently decided to let himself be killed. Less than five months have passed since the commission of the crime; just over two months have elapsed since sentence was imposed. That is hardly sufficient time for mature consideration of the question, nor does Gilmore's erratic behavior—from his suicide attempt to his state habeas petition—evidence such deliberation. No adversary hearing has been held to examine the experts,[1] all employed by the State of Utah, who have pronounced Gilmore sane.[2] The decision of the Utah Supreme Court. finding a valid waiver can be given little weight. In the transcripts that the court prepared for us, it omitted a portion of its proceedings as having "no pertinency" to the issue of Gilmore's "having voluntarily and intelligently waived his right to appeal." That "irrelevant" portion in-

---

[1] If Gilmore's own lawyers refused to question his competence, the court could certainly ask other counsel acting as *amicus curiae* to present that side of the issue.

[2] As THE CHIEF JUSTICE notes, the opinion of the Prison Psychiatrist, the only doctor who has considered Gilmore's competency since the waiver decision was publicly announced, was based on a review of Gilmore's medical records and a *one-hour* interview.

volved a discussion by Gilmore's trial counsel of his opinion of Gilmore's competence and the constitutionality of the Utah statute. It is appalling that any court could consider these questions irrelevant to that determination. It is equally shocking that the Utah court, in a matter of such importance, failed even to have a court reporter present to transcribe the proceeding, instead relying on recordings made by dictating machines which have produced a partly unintelligible record. These inexplicable actions by a court charged with life or death responsibility underscore the failure of the State to determine adequately the validity of Gilmore's purported waiver and the propriety of imposing capital punishment.

MR. JUSTICE BLACKMUN, dissenting.

I am of the view that the question of Bessie Gilmore's standing and the constitutional issue are not insubstantial, and, indeed, in the context of this case, are of manifest importance. I therefore would have the pending application set for expeditious hearing and given plenary, not summary, consideration. See Mr. Justice Harlan's haunting admonition, which I joined, in *New York Times Co.* v. *United States,* 403 U. S. 713, 752, 755 (1971) (Harlan, J., dissenting).