## HAMMETT v. TEXAS

No. 79–5050.  Decided July 2, 1980

PER CURIAM.

William Jack Hammett, the petitioner in this case, has been convicted of murder and sentenced to death.  The conviction and sentence were affirmed by the Texas Court of Criminal Appeals, 578 S. W. 2d 699 (1979).  The petitioner states, and his attorney does not deny, that he informed his counsel that he did not wish to pursue any further appeals in his case.  Nevertheless, counsel filed a petition requesting review by this Court.

Petitioner now moves for dismissal of the petition, stating under oath that he "made this decision voluntarily and with full knowledge of the consequences, only after due consideration of all facts and circumstances regarding the case."  Affidavit of June 3, 1980.  Under Rule 60 of the Rules of the Supreme Court (1970), a petitioner or appellant may withdraw a petition or appeal.  In response to this motion, petitioner's counsel does not question petitioner's competence.  The State of Texas does not oppose petitioner's motion.  In the absence of any issue as to petitioner's competence to withdraw the petition filed against his will, there is no basis under Rule 60 for denying this motion.  See *Gilmore* v. *Utah*, 429 U. S. 1012, 1014 (1976) (BURGER, C. J., concurring).  Moreover, withdrawal of the petition will not foreclose an ap-

propriate application for collateral relief. Accordingly, the motion to withdraw the petition is granted.

*It is so ordered.*

Mr. Justice Marshall, with whom Mr. Justice Brennan joins, dissenting.

The Court today permits petitioner, a prisoner acting *pro se,* to take the first step towards enforcement of his death sentence by withdrawing the petition for writ of certiorari filed on his behalf by his appointed counsel. I continue to adhere to my view that the death penalty is unconstitutional under all circumstances, and accordingly I dissent. In addition, however, the present decision is indefensible even under the more restrictive view of the Eighth Amendment taken by a majority of my Brethren.

The Court takes its action today despite the fact that we have already granted certiorari in a similar case to determine whether the Constitution is violated by the manner in which the State of Texas acquires psychiatric testimony introduced at the punishment phase of the trial to obtain a jury verdict setting the punishment at death. *Estelle* v. *Smith,* 445 U. S. 926 (1980). The United States Court of Appeals for the Fifth Circuit has already held that the established pattern of conduct by which the State of Texas obtains the testimony necessary to send a defendant to his death violates the Fifth, Sixth, and Fourteenth Amendments. *Smith* v. *Estelle,* 602 F. 2d 694 (1979). Thus the Court today acquiesces in the petitioner's apparent decision to be executed despite the fact that we may hold next Term that the death penalty cannot be enforced in cases such as this one. I do not believe that a defendant may by his consent permit a State to impose a punishment forbidden by the Constitution; "the procedure the Court approves today amounts to nothing less than state-administered suicide." *Lenhard* v. *Wolff,* 444 U. S. 807, 815 (1979) (Marshall, J., dissenting).

## I

A few facts about this case must be briefly stated in order to place the present motion in its proper context. Petitioner was originally tried for capital murder in the spring of 1977. Although the jury found the defendant guilty of capital murder, a mistrial was declared after the jury was unable to agree on the punishment during the sentencing phase of the trial. See 578 S. W. 2d 699, 706 (Tex. Crim. App. 1979). The second trial was held in the fall of 1977, and petitioner was again found guilty of capital murder. The jury answered the requisite questions in the affirmative, and the punishment was therefore assessed at death.[1]

The Texas Court of Criminal Appeals initially reversed the judgment of the trial court. See App. to Pet. for Cert., Exhibit A. The Court of Criminal Appeals concluded that it was error to deny petitioner's motion for appointment of a psychologist to examine petitioner for the purpose of testifying on his behalf concerning the probability that petitioner would commit future criminal acts of violence.[2] On the

---

[1] By state statute the jury in a capital case in Texas must decide three questions:

"(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

"(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

"(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased." Tex. Code Crim. Proc. Ann., Art. 37.071 (b) (Vernon Supp. 1979). An affirmative answer to each question must be unanimous, and if all three questions are answered affirmatively then the death penalty "shall" be imposed. Tex. Code Crim. Proc. Ann., Arts. 37.071 (d)(1) and (e) (Vernon Supp. 1979).

[2] The Texas Court of Criminal Appeals reasoned:

"Those who face an accusation of being likely to commit criminal acts of violence that will constitute a continuing threat to society face a pecu-

State's motion for rehearing, however, that opinion was withdrawn and the court affirmed the conviction and sentence. 578 S. W. 2d 699 (1979). The court concluded that petitioner's motion for appointment of a defense psychologist had been made too late.

The central issue raised by the petition for certiorari in this case concerns the use of psychiatric testimony during the punishment stage of a Texas capital case.[3] Prior to the first trial, the court appointed Dr. Bill W. Henry, a psychiatrist, to examine petitioner to determine his mental competency to stand trial. Dr. Henry filed two written reports with the court, based on two interviews with petitioner, concluding that the defendant was competent to stand trial. Counsel apparently was not present at either interview. Cf. *id.*, at

---

liarly unique charge with ominous consequences. In this jurisdiction the use of the expert opinion testimony of those in the behavioral sciences has frequently been resorted to by the prosecution, and this Court has consistently approved such use, often basing the sufficiency of the evidence to support a death-producing verdict on that evidence. . . . Given the role such evidence has come to play, the unique character of the issue, the extreme consequences that rest on resolution of the issue, and the tremendous diversity of opinions on such matters within the field of experts that may qualify to give such evidence on the issue, it cannot be denied that for accused persons facing the possibility of death, expert behavioral witnesses for the defense are necessities, not luxuries." App. to Pet. for Cert., Exhibit A, pp. 3–4.

See also 578 S. W. 2d 699, 720–721 (Tex. Crim. App. 1979) (Odom, J., concurring).

[3] In the Texas Court of Criminal Appeals petitioner argued, *inter alia,* that "the trial court erred in allowing a psychiatrist who was appointed to examine the [defendant] with respect to his competency to stand trial to testify at the punishment phase of the trial." *Id.,* at 705. A similar argument is made in the petition for certiorari. See, *e. g.,* Pet. for Cert. 6–7: "[T]he circumstances surrounding the State's ·presentation of Dr. Henry's testimony at the punishment stage of trial was grossly unfair and the defendant was thus denied due process of law," citing *Smith* v. *Estelle,* 445 F. Supp. 647 (ND Tex. 1977). See also Pet. for Cert. 14–16, 17–18.

705. No issue of competency was raised during the guilt phase of either of petitioner's trials.

At the punishment stage of each trial, however, the State was permitted to call Dr. Henry as an expert witness. The State examined Dr. Henry on whether there was a probability that the petitioner would commit criminal acts of violence in the future that would constitute a continuing threat to society. That issue is, of course, one of the statutorily required questions which must be presented to the jury in the sentencing phase of a Texas capital case; if the jury finds beyond a reasonable doubt that such a probability of future violent crime exists, in addition to the other statutorily mandated findings, then the death penalty must be imposed.[4] Based on the pretrial psychiatric examinations which were supposedly limited to the question whether the petitioner was legally competent to stand trial, Dr. Henry testified that the defendant was a "person suffering of an antisocial personality," id., at 706, and that petitioner would probably commit criminal acts of violence in the future.

## II

It has become clear that the scenario just described constitutes a customary pattern of conduct by the authorities in Texas capital cases. This is by no means the first time that a pretrial examination allegedly sought only to ascertain the defendant's competence to stand trial has been used as the basis for punishment-stage testimony by the court-appointed psychiatrist that the defendant has an antisocial personality and is likely to commit future violent crimes. The cases in the Texas Court of Criminal Appeals reflecting this pattern of official conduct are legion. See. e. g., *Wilder* v. *State,* 583 S. W. 2d 349 (1979), cert. pending, No. 79–5002; *Armour* v. *State,* 583 S. W. 2d 349 (1979), cert. pending, No. 79–5007; *Bell* v. *State,* 582 S. W. 2d 800 (1979), cert. pend-

---

[4] See n. 1, *supra.*

ing, No. 79–5199; *Garcia* v. *State,* 581 S. W. 2d 168 (1979), cert. pending, No. 79–5464; *Woods* v. *State,* 569 S. W. 2d 901 (1978), cert. pending, No. 79–721; *Livingston* v. *State,* 542 S. W. 2d 655 (1976), cert. denied, 431 U. S. 933 (1979); *Gholson* v. *State,* 542 S. W. 2d 395 (1976), cert. denied, 432 U. S. 911 (1977); *Smith* v. *State,* 540 S. W. 2d 693 (1976), cert. denied, 430 U. S. 922 (1977), death penalty vacated, *Smith* v. *Estelle,* 445 F. Supp. 647 (ND Tex. 1977), aff'd, 602 F. 2d 694 (CA5 1979), cert. granted, 445 U. S. 926 (1980); *Hurd* v. *State,* 513 S. W. 2d 936 (1974); *Armstrong* v. *State,* 502 S. W. 2d 731 (1973). The use at the punishment stage of testimony by the psychiatrist appointed by the court to establish the defendant's competency to stand trial has the official sanction of the Texas Court of Criminal Appeals. See *Armour* v. *State, supra; Livingston* v. *State, supra; Gholson* v. *State, supra.*

The United States Court of Appeals for the Fifth Circuit has concluded that this practice violates the Fifth and Sixth Amendments as made applicable to the States through the Due Process Clause of the Fourteenth Amendment. See *Smith* v. *Estelle,* 602 F. 2d 694 (1979), aff'g 445 F. Supp. 647 (ND Tex. 1977). The Court of Appeals held that "a defendant may not be compelled to speak to a psychiatrist who can use his statements against him at the sentencing phase of a capital trial," 602 F. 2d, at 708, that the defendant must be warned that he has the right to remain silent, and that if a defendant indicates that he wishes to remain silent he may not be questioned by the psychiatrist to determine future dangerousness, *ibid.*[5] That court also found that

---

[5] In the instant case there is evidence that in fact petitioner did not want to cooperate with Dr. Henry during the interview. See 578 S. W. 2d, at 705; Brief in Opposition 4.

The State's response to the petition for certiorari alleges that Dr. Henry informed petitioner of his right not to participate and that the psychiatrist terminated the first interview after petitioner chose not to continue. *Ibid.* Even if that was the case, it does not necessarily mean that the

whether to submit to a pretrial psychiatric examination in a Texas capital case "is a vitally important decision, literally a life or death matter," *ibid.* The examination is therefore a critical stage in the prosecution, and the defendant is entitled to the assistance of counsel under the Sixth Amendment. *Id.*, at 708–709.

Because of the seriousness of the issues raised and the conflict between the Texas Court of Criminal Appeals and the United States Court of Appeals for the Fifth Circuit, we have already granted certiorari in *Estelle* v. *Smith*, 445 U. S. 926 (1980). Should this Court agree with the federal court, the death penalty imposed on petitioner in the instant case would have to be reconsidered because of the manner in which the crucial psychiatric testimony against him was obtained.

Nevertheless, the Court today permits petitioner, acting *pro se*, to withdraw his petition for certiorari, thereby setting in motion the steps by which the defendant may be put to death by the State of Texas.[6] It appears that petitioner does not intend to prosecute any challenge to his conviction and sentence;[7] petitioner asks this Court to permit

_____

procedure used in this case complies with the constitutional requirements discussed by the Court of Appeals in *Smith* v. *Estelle*, and, of course, when this Court reviews that decision we may conclude that the Court of Appeals took an overly narrow view of the constitutional requirements. If this Court affirms the judgment of the Court of Appeals in *Estelle* v. *Smith*, cert. granted, 445 U. S. 926 (1980), at the very least the procedure by which Dr. Henry obtained the information from petitioner from which the psychiatrist derived his testimony would have to be closely scrutinized to see if it satisfied constitutional demands.

[6] According to the State of Texas, if the petition for writ of certiorari is dismissed by this Court, the mandate would then issue from the Texas Court of Criminal Appeals to the trial court. Petitioner would then be formally sentenced to be executed on a date 30 days or more from the date of sentencing. Response to Motion to Dismiss 3. See also Tex. Code Crim. Proc. Ann., Art. 43.14 (Vernon 1979).

[7] Petitioner states that "I no longer wish to appeal (or challenge) my conviction in this case." Motion to Dismiss 1. He also asks this Court

him to withdraw his petition for certiorari "so that the [death] sentence may be carried out." Motion to Dismiss 2. Petitioner in effect seeks to waive a challenge to his execution,[8] despite the fact that the issue of the constitutionality of the practice by which he was sentenced to die is presently pending before this Court. In my judgment, there can be no such waiver. See *Lenhard* v. *Wolff*, 444 U. S., at 810 (MARSHALL, J., dissenting); *Gilmore* v. *Utah*, 429 U. S. 1012, 1019 (1976) (MARSHALL, J., dissenting).

In *Gilmore*, MR. JUSTICE WHITE, joined by MR. JUSTICE BRENNAN and myself, asserted that "the consent of a convicted defendant in a criminal case does not privilege a State to impose a punishment otherwise forbidden by the Eighth Amendment." *Id.*, at 1018 (dissenting opinion). In a separate dissenting opinion, I expressed the view that "the Eighth Amendment not only protects the rights of individuals not to be victims of cruel and unusual punishment, but that it also expresses a fundamental interest of society in ensuring that state authority is not used to administer barbaric punishments." *Id.*, at 1019 (MARSHALL, J., dissenting). "Society is not powerless . . . to resist a defendant's effort to prompt the exercise of capital force," *Lenhard* v. *Wolff, supra,* at 812 (MARSHALL, J., dissenting). The defendant has no right to "state-administered suicide." 444 U. S., at 815.

---

"to set aside this writ and issue an order so stating to the state court so that the sentence may be carried out." *Id.*, at 2.

[8] It is questionable whether petitioner fully understands what he is seeking to waive. In his papers petitioner "moves the Court to dismiss the Appal [*sic*] or Habeas Corpus Application," *id.*, at 1. He does not appear to know whether his appointed attorney filed a petition for certiorari, an appeal, or a habeas corpus application. *Ibid.* It is certainly possible that petitioner has reached his present decision without full knowledge or understanding of the Court of Appeals decision in *Smith* v. *Estelle,* our grant of certiorari to review that decision, or the effect that *Estelle* v. *Smith* may have on his sentence of death. Cf. *Gilmore* v. *Utah,* 429 U. S. 1012, 1019 (1976) (MARSHALL, J., dissenting).

These observations have no less force because here the imposition of the death penalty under these circumstances may be held by a majority of my Brethren to violate the Fifth and Sixth Amendments rather than the Eighth Amendment. Indeed, these views have added force in this case because the procedure employed by the State has been successfully challenged on constitutional grounds in federal court, and the issue of the constitutionality of the manner in which the State obtains the psychiatric testimony necessary to convince the jury that the defendant will probably commit acts of criminal violence in the future is presently pending before this Court. Cf. *Gilmore* v. *Utah*, 429 U. S., at 1018 (WHITE, J., dissenting); *id.*, at 1019 (MARSHALL, J., dissenting); *Lenhard* v. *Wolff, supra,* at 811–812, n. 3 (MARSHALL, J., dissenting).

If this Court agrees with the Court of Appeals in *Estelle* v. *Smith,* then the death penalty imposed on petitioner in the present case must be reconsidered. Under these circumstances I cannot accept the Court's decision to permit the petitioner to withdraw his petition for certiorari and thereby run the risk that the State of Texas will take a life which it is constitutionally prohibited from taking. I dissent.

MR. JUSTICE BLACKMUN, dissenting.

I would not grant this *pro se* application summarily, but would set it for plenary consideration upon briefs and arguments submitted by petitioner's appointed counsel and the State. See *Gilmore* v. *Utah,* 429 U. S. 1012, 1020 (1976) (dissenting opinion).