Joseph M. PARSONS, Petitioner,

v.

Hank GALETKA, Respondent.

No. 95–CV–292 S.

United States District Court,
D. Utah,
Central Division.

July 29, 1999.

Gregory J. Sanders, Kirk G. Gibbs, Kipp & Christian, Salt Lake City, UT, Ronald J. Yengich, Salt Lake City, UT, for Petitioner.

Kris C. Leonard, Thomas B. Brunker, Utah Attorney General's Office, Salt Lake City, UT, David E. Yocom, Salt Lake District Attorney, Salt Lake City, UT, for Respondent.

## ORDER

SAM, Chief Judge.

Joseph Mitchell Parsons, petitioner in this court who sought a writ of habeas corpus under 28 USC § 2254, has made a motion to discharge counsel, forego further federal remedies, and undergo execution. The magistrate judge, after extensive hearing, made a report and recommendation that the petitioner's motion be granted. This court has previously denied the petitioner's petition for habeas corpus. No objection has been taken to the report and recommendation on petitioner's motion to forego further federal proceedings. The court has reviewed the file and hereby adopts the report and recommendation of the magistrate judge. Therefore,

**IT IS HEREBY ORDERED:**

1. Counsel, Gregory Sanders and Ronald Yengich, are **excused** as counsel for Parsons and need act no further on his behalf.

2. The stay of execution previously entered in this case is **vacated.**

3. This case is deemed **closed.**

## REPORT & RECOMMENDATION

BOYCE, United States Magistrate Judge.

Petitioner, Joseph Mitchell Parsons, filed a petition for habeas corpus in this court pursuant to 28 USC § 2254. Petitioner has been convicted in Fifth District Court, Iron County, Utah of the crime of first degree murder and had been sentenced to death. His conviction and sentence was appealed to the Utah Supreme Court which affirmed the conviction and sentence. *State v. Parsons,* 781 P.2d 1275 (Utah, 1989). Petitioner then sought post conviction relief in the Utah courts which was also denied. *Parsons v. Barnes,* 871 P.2d 516 (Utah, 1994).

The petitioner then filed his petition for habeas corpus relief under § 2254 with this court. Proceedings were held on the petition. Counsel and an investigator were appointed, a hearing held on the issues raised and the matter briefed.

On April 26, 1999 the petitioner filed a *pro se* handwritten motion for voluntary dismissal of his petition for habeas corpus (File Entry # 53). He also filed an affidavit in support of his motion in which he said his motion included "The waiving of any and all rights he is guaranteed under the United States Constitution" (File Entry # 54, ¶ 2). Petitioner stated in his affidavit he had informed his attorneys, appointed to represent petitioner, about his decision in this matter (¶'s 4 & 5). Petitioner finally asserted he has been under a death sentence for eleven years and "now believes that the interests of justice would best be served by this court granting his 'motion for voluntary dismissal of (sic) habeas corpus petition', and allowing his death sentence to be carried out." (Id. ¶ 6).

Based on petitioner's motion, the magistrate judge conferred with petitioner's counsel and asked that they consult with petitioner and advise him about his motion. A hearing was held on May 14, 1999 with petitioner, Mr. Greg Sanders, one of petitioner's attorneys, Mr. Brad Rich, an attorney not appointed for petitioner, but standing in for Mr. Ronald Yengich, an attorney who also was appointed for petitioner in this court. Counsel for respondent Warden were present. The petitioner was sworn to give evidence on his motion (Tr. p. 4).

Parsons confirmed he sent his motion and affidavit and that he had an opportunity to discuss his request fully with counsel Greg Sanders and Ronald Yengich or other attorney representing him (Tr. p. 6). The court also called on attorney Sanders

to address his communications with Parsons about the motion.[1] Sanders indicated he met with Parsons following receipt of his motion (Tr. p. 7). The meeting was for an hour and a half and a variety of subjects were discussed. Parsons stated he really wanted to waive further consideration of his petition. Sanders also discussed the legal issues about the § 2254 petition and the process that would follow from the magistrate judge's report and recommendation through the appellate process to the United States Supreme Court (Tr. pp. 7–8). The possible invocation of the commutation process before the Utah Board of Pardons and Parole was also discussed.[2] Counsel also discussed the method of execution and the process and Parsons said he understood and it was acceptable to him (Tr. p. 8).

Attorney Sanders said he never found Parsons to be mentally incompetent, he understood what was said, he asked questions and was fully conversant with counsel. There was no evidence of duress. Parsons did express concern about death row and the system under which he lived (Tr. p. 9). Parsons advised Sanders that Parsons had a certain deadline for the process or he was going to seek execution (Id.). Counsel urged Parsons to await the report and recommendation of the magistrate judge (Id.).

Parsons is 34 years old. He asserted he was fully competent (Tr. pp. 9–10). He discussed the matter of his election with counsel, his family, and inmates with whom he has association. He has had the matter on his mind for some time. It is not something that is a "whim" (Tr. p. 10). He was aware if he prevailed on his legal claims he might have his conviction and sentence set aside (Tr. p. 11).

The conditions on death row have affected his decision but that is "not the whole of it" (Id.). He realized if his sentence was set aside his housing conditions might change for the better (Id.). He also was aware that since he has served 11 years confinement, that that time would be credited against any sentence of years he might eventually receive if he were successful with his challenge. He could eventually become eligible for parole consideration and maybe receive his freedom (Id.). Still it was Parsons' desire to withdraw his petition and pursue other legal avenues of relief (Tr. p. 12). He acknowledged that if he waived further proceedings and then changed his mind that he might be giving up any future relief (Tr. p. 13).

Petitioner was aware of the right to seek relief from the Utah Board of Pardons and Parole and possibly again the Utah court system and he could be prejudiced if he went back to the Utah courts (Id.). A change of confinement circumstances would not effect his decision (Tr. p. 14). He did not believe his decision was because of depression (Id.). Parsons read a statement to the effect that he did not feel it was fair to him, his family, the State of Utah or anyone else to continue to pursue his petition. He has made peace with himself and "would like to move on" (Tr. p. 15).

Counsel have communicated their opinions of Parsons' legal position as to possible results of pursuing his case and whether the issues had merit (Tr. pp. 15–16). Counsel made no recommendation that Parsons drop his petition.

The magistrate judge expressed the opinion to Parsons that he should not drop his petition and that he ought to pursue his remedies in the federal courts (Tr. pp. 16–17). Nothing that occurred in the hearing before the magistrate judge changed Parsons' mind. He was not under the influence of any drug, medication, or volatile substance (Tr. p. 18). He had not received

---

1. Parsons waived any attorney/client privilege (Tr. p. 7).

2. In Utah the authority to commute a death sentence is with the Utah Board of Pardons and Paroles, an executive constitutional body, and not with the Governor. Utah Constitution Art. VII § 12, Title 77 Chap. 27, Utah Code Ann. See more specifically § 77–27–5 and 5.5 Utah Code Ann.

any psychiatric or mental health treatment (Tr. p. 19). Parsons appeared to understand the purpose of the capital sanction (Tr. pp. 19–20). He believed that it was a just desert for him to receive the death penalty for the killing he committed (Tr. p. 20).

The Utah Attorney General had nothing further to add to the proceedings (Id).

Mr. Bradley Rich, appearing for Mr. Yengich, stated that the evidence was that Parsons' decision to drop his federal remedies was knowingly and voluntarily made. Counsel had no evidence of any mental disability (Tr. pp. 20–21).

Because of Mr. Yengich's special experience in criminal and capital cases, the court felt he should further discuss Parsons' decision with him (Tr. p. 22). Parsons stated his decision had nothing to do with the work of Sanders or Yengich and he was grateful for their efforts (Id.). Parsons wished to waive any discussion with Yengich (Tr. p. 23), but other counsel and the court believed a conference between Parsons and Yengich should take place. Parsons was also made aware that the magistrate judge's decision on petitioner's motion would be reviewed by a district judge. The court directed the matter be continued until Yengich could meet with Parsons (Tr. p. 25).

Following the hearing, the magistrate judge had further communication with counsel and because of the lurking concern that might be present under *Ford v. Wainwright,* 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986)[3] on the fitness of defendant to be executed and how it might also apply to decision to waive further proceedings, see *Gilmore v. Utah,* 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976), the court believed that a psychological evaluation of Parsons should be made. Such an examination was ordered (File Entry # 61). This would also have a bearing on any future claims of any third persons as to standing to challenge Parsons' decision. Id.; *Whitmore v. Arkansas,* 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135

(1990); *Evans v. Bennett,* 440 U.S. 1301, 99 S.Ct. 1481, 59 L.Ed.2d 756 (1979).

On June 17, 1999, Dr. Eric Nielsen submitted a report to the court from his examination of Parsons. An examination of Parsons was made at the Utah State Prison. Dr. Nielsen also received information from other sources. He found Parsons to be fully oriented as to time and place and he had appropriate social awareness. He was not depressed or suicidal. Parsons has a prior criminal record other than that for the offense in this case.

Parsons did not believe he would succeed in further legal proceedings and gave precise legal conclusions for his belief. There was no evidence of psychosis or "symptoms of mental illness." He was not irrational and he was not suicidal or in a depressed mood. Parsons does have a personality disorder but it does not evidence delusional beliefs or cognitive difficulties. He has a socialized prison personality that could be associated with a schizoid personality. This is possibly attributable to his prison experience. Dr. Nielsen concluded:

> He is of average to above average intellectual capabilities. He is not afflicted with any serious mental illness that would distort his thinking or cause him to make decisions based on irrational beliefs. His decision making appears to be essentially rational and logical. He does not appear to be suicidal. In fact, he denies that he wants to die but appears to be making a decision about the quality of his life and he states that he simply wants to see "what is next."

The magistrate judge issued a lengthy report and recommendation on petitioner's original petition, carefully analyzing each of the petitioner's arguments made for relief under 28 USC § 2254. The report and recommendation concluded there was no legal basis to afford Parsons relief from his conviction or sentence under federal habe-

---

**3.** See Kent S. Miller and Michael L. Randelet, *Executing the Mentally III* (1993).

as corpus standards and a recommendation was made that his petition be denied.

A final hearing before the magistrate judge was held on July 6, 1999. Mr. Sanders, Yengich and petitioner were present as well as counsel for the State of Utah. At that hearing, Mr. Yengich indicted he had consulted with Parsons. Sanders had also met with petitioner since the magistrate judge's report and recommendation (Tr. # 2, p. 5).[4] Parsons had a copy of the ruling (Id.). Yengich also discussed the magistrate judge's ruling and potential consequence for Parsons' petition (Tr. p. 5).

Again, petitioner acknowledged he understood the federal processes available to him and he was still willing to give up those remedies (Tr. p. 6). He acknowledged he had adequate time for additional discussion with his counsel and his position remained the same, he wished to "drop his appeal" (Tr. p. 7). He understood the consequences could be execution (Tr. pp. 7–8). He felt he had consulted with everyone he wanted to talk to about the matter (Tr. p. 8). He stated he was not under pressure from any other person. He was of clear mind and not confused (Id.). His decision is independent of death row pressures (Tr. p. 9).

Attorney Sanders again stated he believed petitioner to be of sound mind and that he understands his decision. Counsel could not advance a reason to charge Parsons decision (Tr. p. 9).

Mr. Yengich stated he had discussed the matter with petitioner as thoroughly as he wished (Tr. p. 10). Yengich found Parsons understood the legal issues involved. Parsons wished to proceed on his own judgment and reject counsel's advice (Tr. pp. 11–13).

Parsons understood the decision could adversely effect not only his federal rights but his position to seek commutation before the Utah Board of Pardons and Parole (Tr. p. 13). If Parsons did obtain some relief by further pursuit of his post conviction claims, he is aware he may be afforded with the opportunity to live in the general inmate population. Yengich had discussed the commutation process with Parsons (Tr. pp. 14–15).

The Utah Attorney General's office did not oppose Parsons' decision (Tr. p. 15).

Finally, Parsons said his decision to waive further federal judicial proceedings was knowingly, intelligently and voluntarily made (Tr. p. 16).

### *Findings*

1. Petitioner Joseph M. Parsons is an inmate confined at the Utah State Prison at Draper awaiting a sentence of death for the offense of First Degree Murder. He has pursued his case through the Utah courts on direct appeal and for post conviction relief.

2. He filed a petition, under 28 USC § 2254, for habeas corpus in this court, was appointed counsel and an investigator. A stay of execution of the Utah death warrant has been entered by this court. This petition for habeas corpus has been recommended for denial by the magistrate judge.

3. Petitioner has moved this court to dismiss any further proceedings in this court, dismiss counsel, and relieve them from the obligation to pursue any further federal processes on petitioner's behalf and to allow his execution. He requests this court to also rescind its stay of execution.

4. Defendant has been examined by a mental health practitioner. He is not mentally ill, depressed or suicidal and is fully competent to make the decision to forego any further federal court challenge and review of his conviction and sentence. He understands the issues in his case and procedures available to him and how his withdrawal from further federal review of his case may effect him legally and factually. He is aware the likelihood of his actions will result in his execution. He has

---

**4.** Hereinafter, all references to the transcript are to the hearing on July 6, 1999.

had full opportunity to consult with counsel, his family, and all persons he wishes to consult with as to his decision. His decision to withdraw from further pursuit of federal post conviction relief is knowing and voluntary.

### Discussion

In *Gilmore v. Utah,* supra, the Supreme Court held a capital defendant could waive judicial remedies and face execution if his decision to waive his rights was knowingly and intelligently made. See *Hays v. Murphy,* 663 F.2d 1004 (10th Cir.1981). The waiver may not necessarily preclude other relief by the state of Utah if petitioner changes his mind, such as possible consideration for commutation. The waiver in this case is constitutionally proper. See also *Hammett v. Texas,* 448 U.S. 725, 100 S.Ct. 2905, 65 L.Ed.2d 1086 (1980) (withdrawal of death penalty, petitioner's application for certiorari is proper where there is no question of competency). Counsel, under these circumstances, is under no obligation to override petitioner's wish and choice. *Singleton v. Lockhart,* 962 F.2d 1315, 1321 (8th Cir.1992).

Therefore, the petitioner should be allowed to forego any further federal proceedings, as he chooses. This court should excuse counsel from further obligation and lift the stay of execution.

Copies of the foregoing Report and Recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objections to the Report and Recommendation, with the clerk of the court, pursuant to 28 USC § 636(b), within ten (10) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

July 14, 1999.