Miriam **WILSON**, Nadine Schnurstein, Ronald Barrow, Gloria Abbey–Lyles, and Patricia Vader, individually and as next friends acting on behalf of Charles Walker, Petitioners–Appellants,

v.

Michael **LANE**, Director of the Illinois Department of Corrections, Respondent–Appellee.

No. 88–2886.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 28, 1988.

Decided March 15, 1989.

Rehearing and Rehearing En Banc Denied April 19, 1989.

Jon K. Stromsta, Ross & Hardies, Chicago, Ill., for petitioners-appellants.

Kenneth A. Fedinets, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before BAUER, Chief Judge, and WOOD, Jr. and KANNE, Circuit Judges.

BAUER, Chief Judge.

Charles Walker, a death row inmate at the Menard Correctional Center in Chester, Illinois, wants to get his execution by lethal injection over with. Petitioner-appellants Miriam Wilson, Nadine Schnurstein, Ronald Barrow, Gloria Abbey–Lyles, and Patricia Vader, however, want to fight on his behalf to the finish. The question in this case is whether they have standing to do so.

### I.

Walker pleaded guilty to two counts of murder and one count of armed robbery in the Circuit Court for St. Clair County, Illinois. Following a jury sentencing hearing, the circuit court sentenced Walker to death on the murder counts and to thirty years imprisonment on the armed robbery count. On December 20, 1985, the Illinois Supreme Court affirmed Walker's conviction and death sentence.

On December 27, 1985, Walker moved to terminate further proceedings on his behalf, informing his appointed counsel that he wanted to be executed. On February 6, 1986, the Illinois Supreme Court denied Walker's motion to terminate further proceedings, and denied his counsel's petition for rehearing. Walker's counsel next filed a petition for writ of certiorari in the United States Supreme Court, in spite of the fact that Walker opposed the action and refused to sign an affidavit in support of a motion to proceed in forma pauperis. On December 1, 1986, the Supreme Court denied the certiorari petition. *Walker v. Illinois*, 479 U.S. 995, 107 S.Ct. 598, 93 L.Ed. 2d 598 (1986), *reh'g denied*, 479 U.S. 1047, 107 S.Ct. 913, 93 L.Ed.2d 862 (1987).

On February 19, 1987, the Illinois Supreme Court, responding to a request of counsel, remanded Walker's case to the Circuit Court for St. Clair County to determine whether Walker "(1) is mentally competent to waive further legal actions on his behalf; (2) has made a knowing and intelligent waiver of any such further legal actions; and (3) is fit to be executed." After a June 24, 1987 hearing, at which court-appointed counsel represented Walker, the circuit court ruled that Walker was mentally competent to waive further legal efforts on his behalf and that he was fit to be executed.

On September 28, 1987, however, the Illinois Supreme Court directed the circuit court to conduct another hearing on Walker's mental condition because Walker's appointed counsel at the June 24 hearing did not oppose the state's position that Walker was competent and fit for execution. On November 20, 1987, the circuit court held the second hearing, after which it again found Walker to be both mentally competent to waive further legal efforts on his behalf and fit for execution. On January 19, 1988, the Illinois Supreme Court reviewed Walker's case and concluded "that Charles Walker is mentally competent to waive further legal actions on his behalf; has made a knowing and intelligent waiver of any such further legal actions; and is fit to be executed." Having made that determination, the Illinois high court set Walker's execution date for May 10, 1988.

On March 15, 1988, the appellants filed their next-friend habeus corpus petition pursuant to 28 U.S.C. § 2242, which provides that an "[a]pplication for a writ of habeus corpus shall be in writing signed and verified by the person for whose relief it is intended *or by someone acting in his behalf.*" The petition, in which Walker re-

fused to join,[1] consists of two claims. First, appellants challenge in their individual capacities the constitutionality of the Illinois death penalty statute.[2] Second, appellants assert as next-friends of Walker (and not in their individual capacities) that Walker's conditions of confinement on death row violate several constitutional provisions and that these conditions, coupled with the chronic effects of Walker's alcoholism, have caused Walker involuntarily to waive further legal efforts on his behalf.

On April 19, 1988, the district court, after conducting an initial hearing on appellants' petition, (1) dismissed appellants' constitutional challenge to the Illinois death penalty statute for lack of standing; and (2) stayed Walker's execution pending an evidentiary hearing on the issue "whether Walker suffers from an overborne will which substantially affects his capacity, thereby rendering his decision to abandon further relief involuntary." The district court then appointed an expert to perform a psychiatric evaluation of Walker. The court also appointed counsel to represent Walker and granted the parties leave to hire their own experts to perform separate evaluations.

The August 8, 1988 hearing on the question whether Walker suffers from an overborne will was, to a large extent, a battle of the experts. On one side, appellants' expert, Dr. Curtis L. Barrett, testified that Walker's chronic alcoholism had so impaired his judgment that, but for the disease, Walker would be making every effort to save his life. On the other side, the court-appointed expert, Dr. Robert E. Beck-

er, testified that Walker's decision making was best explained by his antisocial personality, not chronic alcoholism, and that Walker was mentally capable of voluntarily waiving further review of his death sentence. In the end, the district court found Dr. Becker to be "the more credible expert" who offered "a more reasonable explanation of Walker's actions." The court also was influenced by its opportunity to examine Walker on the stand. According to the court, Walker was "credible, lucid, and rational" in explaining his decision to waive further review of his guilty plea and death sentence.

Accordingly, the district court found "that petitioners' original basis for their petition, that the conditions of confinement have caused Walker's will to be overborne, rendering his decision involuntary, is without merit." The court concluded that "Walker's waiver of the right to further review was made freely and rationally" and that "under the totality of the circumstances, Walker's decision is the product of both rational intellect and unconstrained will." The court specifically found that "Walker has the capacity to knowingly waive his right to further review of his death sentence, and the same is done voluntarily." As a result, the district court denied appellants standing to pursue Walker's post-conviction remedies on his behalf, 697 F.Supp. 1500.

II.

Appellants claim that the district court erred in denying them standing as individu-

---

1. On April 6, 1988, Walker wrote a letter to the district court stating that he did not want anyone undertaking legal action on his behalf. The text of the letter is as follows:

Dear Sir:
In regards to the Habeus Corpus filed in my case (Cause No. 88–3180).
This is to affirm that I don't want any one speaking or acting on my behalf. Before I was sentenced I had told my sister that if I was sentenced to death, that one appeal had to be filed according to law but after that I was going to stop my appeals and ask for an execution date. The conditions on death row or any place else has nothing to do with my decision. The people who signed that writ

has only known me the short time I've been here.
Respectfully yours.
s/ Charles T. Walker
Box 711 # 76374
Menard Ill 62259

2. As the district court noted, because appellants are suing in their individual capacities and are asserting their own interests rather than Walker's (even though they presumably intend for Walker to benefit from their efforts), this claim falls outside federal habeus corpus jurisdiction, which extends only to actions brought by or on behalf of a person in custody attacking the conditions of his or her confinement. 28 U.S.C. §§ 2241, 2242. Appellants, therefore, invoke federal jurisdiction over their individual claims pursuant to 28 U.S.C. § 1343(a)(3) to the extent they are cognizable under 42 U.S.C. § 1983.

als to challenge the constitutionality of the Illinois death penalty statute. They also argue that the court inappropriately used an "overborne will" standard to determine that Walker had waived voluntarily his constitutional right to review of his guilty plea and sentence. Finally, appellants assert that the district court's finding that Walker voluntarily waived his right to pursue post-conviction remedies was against the manifest weight of the evidence.

## A.

■ It is well-settled that a next-friend may not file a petition for a writ of habeas corpus on behalf of a detainee if the detainee himself could file the petition. *Weber v. Garza*, 570 F.2d 511, 513 (5th Cir.1978). A next-friend applicant, among other things, must therefore explain why the detainee did not sign and verify the petition. *Id.* at 513–14. If the next-friend cannot do so, "the court is without jurisdiction to consider the petition." *Id.* Thus, a successful attack on Walker's competency is the requisite threshold for appellants' next-friend standing. *Rumbaugh v. McKaskle*, 730 F.2d 291, 293 (5th Cir.1984); *Lenhard v. Wolff*, 443 U.S. 1306, 1308, 100 S.Ct. 3, 4, 61 L.Ed.2d 885 (1979) (Rehnquist, J., Opinion in Chambers).

■ In their original petition and supplement thereto, appellants asserted next-friend standing by claiming that the conditions of Walker's confinement on death row "have impeded and violated Mr. Walker's ability to freely and voluntarily exercise his constitutional rights, including his right to pursue state post-conviction and federal habeus corpus remedies." The district court examined this claim under the Supreme Court's standard in *Rees v. Peyton* for determining whether a convicted defendant is mentally competent to choose not to pursue further appeals or collateral attacks on his conviction or sentence. Under *Rees,* the court must ask

> whether [the convicted defendant] has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is

suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises.

*Rees,* 384 U.S. 312, 314, 86 S.Ct. 1505, 1506, 16 L.Ed.2d 583 (1966).

Although *Rees* seems to apply squarely to Walker, appellants complain that the district court, by limiting the scope of its inquiry to whether Charles Walker lacked the "capacity" to voluntarily waive his constitutional right to post-conviction review of his guilty plea and death sentence, failed to recognize that mental competency or capacity are issues separate and distinct from the issue of voluntariness. According to appellants, "[t]he district court's exceedingly narrow standard fails to account for waiver decisions that are involuntary because they are unduly influenced by improper factors when the mental competency or capacity of the individuals making those decisions is not otherwise in dispute."

Appellants, as they did in the district court, base their claim on the Eighth Circuit's decision in *Smith v. Armontrout,* 812 F.2d 1050 (8th Cir.1987), in which that court divided the inquiry into a defendant's decision to forego further review into two questions:

> first, whether [the defendant] had the capacity to appreciate his position and make a rational decision, or was suffering from a mental disease, disorder, or defect that substantially affected his capacity, *see Rees v. Peyton,* 384 U.S. at 314 [86 S.Ct. at 1506], ... and second, *whether the conditions of his confinement rendered his decision involuntary. See Johnson v. Zerbst,* 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461] ... (1938).

812 F.2d at 1053 (emphasis added). In the district court's view, however, both *Johnson v. Zerbst* and *Rees* "confined the inquiry to Walker's competence or capacity to terminate his pursuit of judicial remedies," not to the specific causes for any alleged incapacity. And to the extent the second prong of the *Smith* inquiry focused on the defendant's capacity or competence to waive voluntarily further legal review, the court reasoned that that question was

subsumed within the *Rees* standard. The district court, therefore, refused to focus its voluntariness inquiry specifically on Walker's conditions of confinement. The issue, ruled the court, was "whether Walker's waiver was voluntary, or the result of a flawed mental state due to an overborne will."

Appellants may quarrel with the district court's approach, but we think the court did exactly what appellants asked it to do. To begin with, to the extent the district court emphasized the concept of an "overborne will," we point out that in their Supplemental Memorandum in Support of Next–Friend Habeus Corpus Petition, appellants, in asserting that Walker's waiver decision is involuntary, stated: "A person's conduct, while otherwise rational, is not voluntary if it is based on a person's *overborn will* or impaired self-determination that results from coercion or improper influence." Thus, the district court's conclusion that "[p]etitioners, in their pleadings, limit their argument to the claim that Walker's decision to abandon his rights ... demonstrates a flawed mental state resulting from an 'overborne will' " is quite understandable. Appellants from the outset have asserted next-friend standing by claiming that the conditions of Walker's confinement on death row "have impeded and violated Mr. Walker's *ability* to freely and voluntarily exercise his constitutional rights." They now want us to make an elusive distinction between "ability," their term, and "competence" or "capacity," the district court's terms.

Moreover, appellants' notion that Walker's conditions of confinement rendered his decision involuntary seems to fall within Dr. Barrett's and Dr. Becker's stated concepts of "overborne will," both of which the district court found properly to focus on "the voluntary nature of Walker's decision." For example, Dr. Becker focused on whether there were "psychological internal factors in [Walker] that were causing him to reach this decision *or whether there were external environmental effects of the institutionalization that might be forcing him in some way to reach this decision.*" Dr. Barrett described "over-borne will" as something "that might lead a person not to be able to direct his own behavior in a logically consistent and self-serving way." Presumably this would include adverse conditions of confinement. Notably, neither expert found that any environmental factor affected Walker's capacity to make a voluntary waiver.

Finally, and most notably, Walker himself did not voice any serious concerns about the conditions of his confinement to the district court. To the contrary,

> Walker testified that he still desires not to pursue any further review of his sentence. He told the court that he had made this decision, and he had told his family of it the night before he was sentenced. He has not wavered in that decision at any time since.

> . . . . .

> ... He stated that he would not change his opinion even if he were guaranteed an opportunity for pardon at age 70 or 75. He understood the federal review options available to him, and was aware of the efforts being made on his behalf by the petitioners. *He stated that it was not the lack of medical care, the conditions of his confinement, or the counseling available that were the determining factors in his decision.... Walker said that there was "no possibility, hope or dream" of being a free man, and that there was no sense in being imprisoned for 10–25 years and then dying, when the end result would be the same—death.*

It is not surprising, then, that the district court found that "Walker's decision is, in part, based on the quality of his life due to the fact, *not conditions,* of confinement and the sheer lack of possibility of freedom during his lifetime." (Emphasis added.) Certainly this finding is not clearly erroneous. Nor do we think the district court erred on the way to reaching this conclusion.

### B.

■ Which brings us to appellants' second argument—that the district court erred

in concluding that they lacked standing as individuals to attack the constitutionality of the Illinois death penalty statute. As the Supreme Court has described it, "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues," an inquiry which "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). One of those prudential limitations is that a litigant generally must assert his or her own legal rights and cannot rest a claim for relief on the legal rights or interests of third parties. *Id.* at 499, 95 S.Ct. at 2205.

This limitation rests upon two considerations. The first is that courts should not adjudicate the rights of third persons not parties to the litigation unnecessarily. *Singleton v. Wulff*, 428 U.S. 106, 113, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976). As the Supreme Court has explained, "*it may be that in fact the holders of those rights either do not wish to assert them*, or will be able to enjoy them regardless of whether the in-court litigant is successful or not." *Id.* at 113–14, 96 S.Ct. at 2873–74 (emphasis added). The second is that third parties themselves usually will be the best proponents of their own rights. *Id.* at 114, 96 S.Ct. at 2874. Both of these considerations, like article III's requirement of actual injury fairly traceable to the defendant's putatively illegal conduct and redressable by judicial relief, "reflect[ ] a due regard for the autonomy of those persons likely to be most directly affected by a judicial order. The federal courts have abjured appeals to their authority which would convert the judicial process into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982) (quoting *United States v. SCRAP*, 412 U.S. 669, 687, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973).

Of course, like all good rules, the restriction against litigants asserting the legal rights of third parties allows for exceptions when its underlying justifications are absent. Under Supreme Court teachings, two factual elements bear on this determination.

> The first is the relationship of the litigant to the person whose right he seeks to assert. If the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue, the court at least can be sure that its construction of the right is not unnecessary in the sense that the right's enjoyment will be unaffected by the outcome of the suit. Further, the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter.

*Singleton*, 428 U.S. at 115, 96 S.Ct. at 2874. Second, and most important for purposes of this case, however,

> *is the ability of the third party to assert his own right. Even where the relationship is close, the reasons for requiring persons to assert their own rights will generally still apply.* If there is some genuine obstacle to such assertion, however, the third party's absence from court loses its tendency to suggest that his right is not truly at stake, or truly important to him, and the party who is in court becomes by default the right's best available proponent.

*Id.* at 115–16, 96 S.Ct. at 2874–75 (emphasis added).

Appellants' assertion of "Mr. Walker's right to challenge the validity of the Illinois death penalty statute in federal court" falls squarely within the prudential standing restriction against the assertion of third-party legal rights or interests, so appellants understandably argue that theirs is the exceptional case. They contend that, taken together, their relationship with Walker and the nature of the right they seek to assert on his behalf make it appropriate for them to press his right to seek review of the Illinois statute. Unfortunately, appellants can point to no genuine obstacle preventing Walker from asserting his own claims now that we have upheld the district

court's ruling that Walker waived voluntarily further legal efforts on his behalf. Under *Singleton*, then, even if the relationship between appellants and Walker is a close one, the reasons for requiring Walker to assert his own rights still exist. Appellants, therefore, also lack standing as individuals to assert Walker's right to challenge the Illinois death penalty statute.

For these reasons, the district court's dismissal of appellants' petition is

AFFIRMED.