831 A.2d 1144

**COMMONWEALTH EQUITY SERVICES, INC., et al.**

v.

**Walter H. MESSICK, et ux.**

**No. 352, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Sept. 9, 2003.

382

Gilbert W. Boyce (Jennifer M. Blunt, Kutak Rock LLP, on brief for Commonwealth), Washington, DC, (David B. Stratton, Jordan, Coyne & Savits, Washington, DC, on brief for Michael P. Keating, Sr.), for appellants.

Thomas C. Costello (John H. West, III, West & Moore, LLC, on brief), Baltimore, for appellees.

Argued before SALMON, BARBERA, RAYMOND G. THIEME JR., (Retired, specially assigned), JJ.

## REPORTED

BARBERA, J.

This appeal arises from a complaint filed by appellees, Walter and Elizabeth Messick, alleging that appellants, Commonwealth Equity Services, Inc. ("Commonwealth") and Michael P. Keating, Sr., fraudulently offered and sold securities. Approximately fifteen months after appellees filed suit, both appellants filed petitions to stay the proceedings and to compel arbitration. Following a hearing, the Circuit Court for Baltimore County issued an order that, among other things, denied appellants' petitions.

Appellants noted this appeal from that order.[1] They raise two issues for our review:

I. Whether the circuit court erred in failing to enforce the parties' agreement to arbitrate.

II. Whether the arbitration agreement is valid and enforceable as to the claims raised by the complaint.

For the reasons that follow, we affirm.

## FACTS AND PROCEEDINGS

The case *sub judice* is among sixteen separate but related lawsuits filed against Keating, eight of which also name Commonwealth as a defendant. Twelve of these cases were consolidated into three groups for the purpose of resolving pretrial motions and scheduling matters. The Honorable Kathleen Gallogly Cox presided over the pretrial hearings in most of the consolidated cases.

---

1. We explain in the discussion that the interlocutory order entered in the case *sub judice* is an appealable final judgment.

On December 1, 2000, appellees filed this action against appellants and eight other defendants, alleging, as relevant to the various defendants, negligence, negligent misrepresentation, and negligent supervision. Commonwealth thereafter filed its answer, asserting seven affirmative defenses. None of them—procedural defenses or defenses on the merits—mentioned the existence and/or applicability of the arbitration agreement between Commonwealth and appellees.[2]

One day after filing its answer, Commonwealth served appellees with written interrogatories and a request for production of documents. Appellees responded to the interrogatories on July 9, 2001.

Keating filed an answer on August 9, 2001, asserting twelve affirmative defenses, one of which stated that appellees' "claims are, or may be, entirely within the scope of written arbitration clauses which are valid and enforceable." Keating served appellees with written interrogatories and a request for documents on September 18, 2001, and with a second set of document requests on December 13, 2001. Appellees responded to the interrogatories on February 1, 2002.

The court issued a scheduling order identifying February 1, 2002 as the discovery completion deadline and February 15, 2002 as the dispositive motion deadline. On February 13, 2002, Commonwealth filed a petition to stay the proceedings

---

2. Appellees opened their investment accounts with Commonwealth in October 1992. At that time, they signed a New Account Form, which stated in relevant part:

This account is subject to the arbitration rules of the New York Stock Exchange, Inc. or National Association of Securities Dealers, Inc. . . . I am aware of the following:

(A) Arbitration is final and binding on the parties.

(B) The parties are waiving their right to seek remedies in court, including the right to jury trial.

(C) Pre-arbitration discovery is generally more limited than and different from court proceedings.

(D) The arbitrators' award is not required to include factual findings or legal reasoning and any party's right to appeal or to seek modification of rulings by the arbitrators is strictly limited.

(E) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

and to compel arbitration. Keating filed a similar petition on February 20, 2002, adopting Commonwealth's arguments. Appellees filed an opposition to both petitions on February 28, 2002.

The parties appeared for a hearing on March 25, 2002, where they presented arguments on appellants' petitions to compel arbitration.[3] Counsel for appellant Commonwealth argued that the company had not waived its right to arbitration by failing to include arbitration as an affirmative defense in its answer. Counsel acknowledged that appellees had been deposed and that Commonwealth had the transcript of that deposition, but Commonwealth neither noted nor participated in the deposition. Counsel also acknowledged that Commonwealth had served appellees with written interrogatories and a request for document production. Counsel contended, however, that those two discovery devices would have been allowed had the parties gone to arbitration, according to the National Association of Security Dealers ("NASD") Code of Arbitration Procedure. Consequently, counsel reasoned, appellees would suffer no prejudice if the matter were to be referred to arbitration. Counsel added that any advantage Commonwealth had gained during discovery was shared by appellees, who participated in the same types of discovery as did Commonwealth.

When asked by the court why Commonwealth delayed filing its petition to compel arbitration, counsel explained that Commonwealth "needed to make sure, Your Honor, that, in fact, these people did sign these documents, and in these cases, Your Honor, these individuals did testify under oath that they signed the [arbitration agreement]."

To this the court responded:

Here's my problem conceptually with this. You may not have taken discovery in these cases, but these cases come

---

**3.** The motions hearing included arguments on pending motions involving appellants, appellees, and the plaintiffs in the other two of the three cases grouped together for the purpose of pretrial motions and scheduling matters.

on the heel of eight or nine that I have already ruled on where the only new discovery in each of them, I would imagine, is taking the deposition of the individual plaintiff because all of the other fact discovery has been done in the cases that precede them.

Commonwealth's counsel replied: "[T]hey are the same, Your Honor. We're not going to deny that, but in terms of whether or not these cases should be grouped with the other cases, Your Honor, again, the Supreme Court has held that waiver is not to be inferred lightly."

Counsel for appellant Keating argued that Keating did assert arbitration as an affirmative defense in his answer. Counsel further claimed that, even though Keating had access to appellees' deposition transcript, Keating had not noted or participated in the deposition. Counsel acknowledged that Keating filed written interrogatories and two requests for production of documents on appellees but that, as of the date of the hearing, he had not yet received any responses to the document requests. There was no prejudice to appellees, argued Keating's counsel, with regard to discovery. Counsel added that appellees' answers to interrogatories would be "useless in arbitration or litigation."

The parties presented arguments concerning whether and to what extent decisions in the related cases of *Kelly v. Keating, et al.* and *Kowalski v. Keating, et al.* bore on the resolution of appellants' petitions to compel arbitration. Counsel for appellees urged Judge Cox not "to look at Commonwealth's actions in a vacuum." Counsel pointed to *Kelly*, the first action appellees' counsel had filed in this string of cases and which named Keating and Commonwealth as defendants. Commonwealth's first pleading in *Kelly* had been a motion to dismiss the lawsuit based on the arbitration agreement. At a hearing before the Honorable Alexander Wright of the Circuit Court for Baltimore County, Kelly had argued against dismissal of the lawsuit on the ground that the arbitration agreement was not signed and was therefore unenforceable. Commonwealth responded that the arbitration agreement need not have been signed by Kelly to be enforceable,

because it is Commonwealth's business practice to include arbitration clauses in new account documents. Judge Wright agreed with Commonwealth and compelled arbitration in that case.

Judge Wright handed down his decision in *Kelly* on July 23, 1999. Consequently, appellees argued in the instant case that Commonwealth knew as early as the summer of 1999 that it could have compelled arbitration in the remaining consolidated cases, including the instant case, but Commonwealth chose instead to litigate the matters in the Circuit Court for Baltimore County. Appellees asked the court to reject Commonwealth's explanation that it had delayed filing the petition to compel arbitration in this case until Commonwealth "learned for the first time" that appellees had signed the arbitration agreement, which fact, according to Commonwealth, "was critical to [its] decision as to whether to file a petition to compel arbitration." Appellees argued that, in view of the ruling in *Kelly* (which had been rendered more than sixteen months before appellees filed suit in the instant case), appellants could have sought to compel arbitration at the outset of appellees' suit regardless of whether appellees had acknowledged under oath to signing the forms. In other words, *Kelly* made clear that appellants did not need to await the outcome of appellees' depositions in the instant case to determine the efficacy of arbitration.

Appellees also argued that Commonwealth filed petitions to compel arbitration in other related actions, including the instant case, only after Judge Cox issued a ruling in *Kowalski* that was unfavorable to Commonwealth on the question of successor liability. It was this adverse ruling in the *Kowalski* case, argued appellees, that prompted Commonwealth and Keating to file their petitions to compel arbitration in the instant case.

Appellees noted that fifteen months had elapsed between the filing of their complaint and appellants' filing of the petitions to compel arbitration. During that time, the discovery deadline and dispositive motions deadline had passed.

Counsel for appellees stated: "Th[is] case has been litigated. All that's left is trial." Counsel asserted that appellees would be prejudiced by the delay attendant to having the matter referred to arbitration, given "the tremendous amount of time and money invested" in litigating their claim to that point.

Finally, counsel for appellees refuted Commonwealth's contention that the NASD rules permitted interrogatories. Counsel said: "You're not allowed to get interrogatories, and deposition is not available unless ... the parties agree or there's some unusual circumstances where the panel compels it, but it is just generally not available."

On rebuttal, Commonwealth denied that it decided to file its petition to compel arbitration only after receiving an unfavorable ruling in *Kowalski*. On this point, the following exchange ensued between Judge Cox and counsel for Commonwealth:

THE COURT: [H]ow is it that on the last series of these motions that I am going to hear, we have essentially a new theory, which, if I believed it to be a valid one, would have applied to everything that went before it?

[COUNSEL]: Your Honor, these particular cases stand on their own, Your Honor. Your Honor is right. There were other cases where that was not done, but these cases are looked at in a vacuum. These cases are not all consolidated. Each case stands on its own.

[Appellees' counsel] has not cited any case that says you look at what somebody did in a case two years ago, three years ago, two months ago because it's not out there.

THE COURT: I think, when the cases are consolidated, you can.

By written opinion entered on April 1, 2002, the court denied appellants' petitions to compel arbitration, finding that appellants had waived any right to arbitrate the issues raised in appellees' complaint.[4] The court wrote:

---

4. The court separately addressed Commonwealth and Keating's petitions in its memorandum opinion, but the substance of the court's ruling is addressed in response to Commonwealth's petition. The court

Although Commonwealth itself has not affirmatively engaged in discovery in these three cases, it has the benefit of discovery done by other parties, and it certainly has engaged in discovery and motions practice in other related cases. These are simply the last three of the fourteen cases consolidated for purposes of discovery and pretrial motions, so to look to what was done in one case in isolation clearly presents a skewed view of the overall history.

The court also pointed out that Commonwealth had not raised arbitration as an affirmative defense at the outset of the instant case, despite Commonwealth's knowledge of the "potential implications of the arbitration clause" after the rulings in *Kelly* and *Kowalski*. Having rejected Commonwealth's explanation for its delay in filing the petition to compel arbitration, the court determined that "[t]he obvious logical explanation for the decision is that it came in response to the Court's Reconsideration of Commonwealth's Motion for Summary Judgment [in *Kowalski* on the issue of successor liability] for acts of Keating while in the employ of Kavanaugh." [5]

The court concluded that Commonwealth had waived its right to arbitration of appellees' claims due to its "failure to raise this issue in its answer or in a timely preliminary motion, and as a consequence of its active participation in the litigation process in the series of related cases." The court likewise denied Keating's petition to compel arbitration inasmuch as he had adopted Commonwealth's arguments in support of his request. *See supra* note 4.

---

did so because Keating essentially adopted Commonwealth's arguments. On this point the court wrote:

> The only basic difference in the position asserted by Keating and that of Commonwealth is that Keating raised the arbitration clause as a bar to these proceedings in his Answer. However, no affirmative steps were taken by Keating to seek a stay or referral to arbitration until the deadline for filing dispositive motions.

5. Commonwealth acquired the accounts of Kavanaugh Securities on July 2, 1992. Keating had been employed by Kavanaugh prior to Commonwealth's purchasing its assets.

Appellants thereafter noted their appeals. Appellants also filed motions to stay the proceedings pending the outcome of the appeal, which the court granted.

## DISCUSSION

### I.

 At the outset, we must address whether the circuit court's order denying appellants' petitions to compel arbitration constitutes a final judgment. We addressed a similar jurisdictional issue in *NRT Mid–Atlantic, Inc. v. Innovative Props., Inc.*, 144 Md.App. 263, 797 A.2d 824 (2002). As in the instant case, the appeal in *NRT* was taken from the circuit court's denial of the petition to compel arbitration filed by one of the parties. We noted preliminarily that the court's order denying the petition was an interlocutory order that is not among those interlocutory orders that are appealable under Md.Code (1973, 2002 Repl.Vol.), § 12–303 of the Courts & Judicial Proceedings Article ("CJ"). We also recognized, however, that a court's order deciding an independent action to compel arbitration under CJ § 3–207 (as opposed to an order deciding a petition filed in a pending lawsuit),

> disposes of the action in its entirety, regardless of whether the order grants or denies the petition. Once the court orders arbitration, or denies it, there is nothing left for it to do. Accordingly, the court's order is a final judgment under CJ section 12–301 [providing the right of appeal from a final judgment].

*NRT,* 144 Md.App. at 277, 797 A.2d 824.

We observed in *NRT* that the party seeking to compel arbitration could have filed a free-standing action to compel arbitration under CJ § 3–207, but, instead, filed its petition to compel in the pending lawsuit between the parties. *Id.* at 278, 797 A.2d 824. Yet, we said, the court's order denying the petition resolved the claim in its entirety, making that order susceptible to certification by the circuit court as a final judgment under Maryland Rule 2–602(b).[6] *Id.* (citing *Town of*

---

6. Maryland Rule 2–602(b) provides:

*Chesapeake Beach v. Pessoa Constr. Co., Inc.,* 330 Md. 744, 752–54, 625 A.2d 1014 (1993)).

None of the parties in *NRT* had asked the circuit court to certify its order denying the claim for arbitration as a final judgment under Rule 2–602(b). *Id.* Nevertheless, "under Rule 8–602(e)(1), if an appellate court concludes that the order being appealed is one the circuit court properly could have exercised its discretion to certify as final, under Rule 2–602(b), we may exercise our discretion to certify the order as final." *Id.*

We concluded that the strong legislative policy favoring enforcement of arbitration agreements also "favors treating as final an order denying a petition to compel arbitration" filed in a pending case. *Id.* at 279, 797 A.2d 824. Furthermore,

[a] final resolution of that predicate issue [concerning the proper forum for resolution of the parties' dispute] will prevent future piecemeal appeals, repeated litigation of the disputed issue . . . and needless expense to the parties. In the case of a petition to compel arbitration filed in an already pending action, that finality only can be obtained by permitting an appeal from an order denying such a petition.

*Id.*

In accordance with Maryland Rule 8–602(e)(1), and for the same reasons as those we outlined in *NRT,* we shall enter a final judgment order in this case on the court's order denying appellants' petitions to compel arbitration.

## II.

■ A trial court's finding of whether a party has waived its contractual right to arbitration is generally a factual determination. *The Redemptorists v. Coulthard Svcs., Inc.,* 145 Md.

---

**When allowed.** If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment: (1) as to one or more but fewer than all of the claims or parties; or
(2) pursuant to Rule 2–501(e)(3), for some but less than all of the amount requested in a claim seeking money relief only.

App. 116, 137, 801 A.2d 1104 (2002). We will reverse a trial court's fact findings only if clearly erroneous. *Id.; RTKL Assocs., Inc. v. Four Vills. Ltd. P'ship,* 95 Md.App. 135, 138, 620 A.2d 351, *cert. denied,* 331 Md. 87, 626 A.2d 371 (1993).

 By way of background, we observe that the United States Supreme Court has held that any doubt over arbitrability "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). There is a similar legislative policy in Maryland favoring the enforcement of arbitration agreements. *Allstate Ins. Co. v. Stinebaugh,* 374 Md. 631, 641, 824 A.2d 87 (2003). "Although the law [in Maryland] looks with favor upon arbitration as a method of dispute resolution, it does not look with favor upon sending parties to arbitration when there is no agreement to arbitrate." *Town of Chesapeake Beach,* 330 Md. at 757, 625 A.2d 1014.

 One factor in determining the existence of an arbitration agreement is whether either party has waived the right to arbitration of any issue covered by the agreement. "A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from the circumstances." *The Redemptorists,* 145 Md.App. at 136, 801 A.2d 1104. The intent to waive the right to arbitration " 'must be clearly established and will not be inferred from equivocal acts or language.' " *Id.* (quoting *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.,* 294 Md. 443, 449, 450 A.2d 1304 (1982)).

 Because of the highly factual nature of arbitration cases, there is no "bright-line" test for making waiver determinations. *Id.* at 137, 801 A.2d 1104. It is well settled, however, that a party who litigates an issue otherwise subject to arbitration waives the right to arbitration of that issue. *Id.; Stauffer Constr. Co., Inc. v. Board of Educ. of Montgomery*

*County,* 54 Md.App. 658, 667, 460 A.2d 609, *cert. denied,* 297 Md. 108 (1983).

## III.

Appellants contend that the court erred in finding that they had waived their right to arbitration of the claims raised by the complaint, and in thereby denying their respective petitions to compel arbitration. They refute the finding of waiver by asserting that they had refrained from actively litigating in the case *sub judice* and that appellees would not be prejudiced if the matter were compelled to arbitration. Although appellants filed separate pleadings and discovery requests in this case, the arguments raised in their briefs essentially overlap, so we address them together.

### A. Appellants' Conduct in Other Consolidated Cases

■ Appellants argue that the court should not have considered their conduct in the other consolidated cases when determining whether they had waived their right to arbitration in the instant case. Commonwealth cites three cases in support of this contention: *Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.,* 294 Md. 443, 450 A.2d 1304 (1982), and two federal cases, *MicroStrategy, Inc. v. Lauricia,* 268 F.3d 244 (4th Cir.2001) and *Lawrence v. Comprehensive Business Svcs. Co.,* 833 F.2d 1159 (5th Cir.1987).

These cases do not assist appellants' cause. In all three cases, the courts declined to find a waiver of the right to arbitration, despite prior litigation involving the parties at issue. The decisions, however, turned on the fact that the prior litigation was unrelated to claims raised in the current litigation. *See Frank,* 294 Md. at 454, 450 A.2d 1304 (prior litigation of an unrelated claims did not constitute a waiver of the right to arbitrate other claims); *MicroStrategy, Inc.,* 268 F.3d at 250–51 (because prior actions in state and federal court were primarily directed to claims unrelated to those currently asserted in federal court, the expense and effort associated with those claims could not be used to demonstrate a waiver of the employer's right to arbitrate new claims);

*Lawrence,* 833 F.2d at 1165 (franchiser's suit in an Illinois small claims court did not amount to a waiver of the franchiser's right to compel arbitration in a subsequent suit filed by the franchisee in a Texas state court, where the franchisee had failed to allege delay or demonstrate prejudice that would arise from enforcing the arbitration agreement). None of these cases is factually apposite to the case *sub judice.*

In the instant case, much of the argument at the hearing on the petitions to compel arbitration focused on the extent to which appellants' conduct in the other consolidated cases bore directly on the question whether appellants had waived their right to arbitration in this case. In particular, Commonwealth argued that its delay in enforcing the arbitration agreement in this case was justified by its need to confirm, through appellees' deposition testimony, whether appellees had signed the arbitration agreement.

Appellees refuted Commonwealth's assertion, noting that the earlier ruling in *Kelly* obviated the need to have an arbitration agreement signed in order to compel arbitration. Appellees also pointed to the court's ruling in *Kowalski,* which strongly suggested that successor liability would be imposed on Commonwealth in the instant matter. Appellees alleged that this ruling was the real reason for appellants' delayed attempt to compel arbitration.

The parties also debated the level of appellants' participation in and benefit from discovery in this case and the consolidated cases. Judge Cox stated that appellants may not have taken discovery in the instant case, but this case

> come[s] on the heel of eight or nine that I have already ruled on where the only new discovery in each of them, I would imagine, is taking the deposition of the individual plaintiff because all of the other fact discovery has been done in the cases that precede [this case].

Commonwealth's counsel then acknowledged that, apart from the individual plaintiffs' depositions, all of the consolidated cases were factually the same.

The record demonstrates that the parties argued their respective positions concerning whether appellants waived their right to arbitration, by referring to what had occurred in the other consolidated cases. It is thus no surprise that the court's ruling turned, in large part, on appellants' conduct in the consolidated cases. We have found no case in Maryland or elsewhere that precludes consideration of such conduct, and we see no error in the court's taking into account what had happened in the other consolidated cases in determining whether appellants had waived their right to arbitration in this case.

### B. Delay in Asserting the Right to Arbitration

 Commonwealth argues that the court erred in resting its finding of waiver on appellants' delay in attempting to compel arbitration. We disagree.

It is well established, at least in the federal courts, that delay, without more, is insufficient to substantiate a finding of waiver. *MicroStrategy, Inc.*, 268 F.3d at 250; *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 982 (4th Cir.1985). The United States Court of Appeals for the Fourth Circuit has held that there must also be actual prejudice to the party opposing arbitration. *Maxum*, 779 F.2d at 982. "Although 'mere delay, without more, will not suffice to constitute waiver, [ ] delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice.'" *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir.1996) (citations omitted).

The law in Maryland is not as clear as that in the federal courts on the question of whether delay in seeking to compel arbitration may alone constitute a waiver, or whether prejudice resulting from the delay must also be shown. The Court of Appeals quite recently observed that " 'an inappropriate delay in demanding arbitration acts as a relinquishment of the contractual right to compel such a proceeding.'" *Allstate Ins. Co.*, 374 Md. at 646, 824 A.2d 87 (citations omitted). Yet, as we noted in *The Redemptorists,*

[n]either party cites a case that concerned a circumstance in which a court found waiver due *solely* to delay. In all of the waiver cases, the party seeking to enforce its right to arbitrate had engaged itself substantially in the judicial forum, by at least filing an answer to the complaint against it.

145 Md.App. at 141, 801 A.2d 1104.

It is undisputed that Commonwealth did not assert the right to arbitration as an affirmative defense to appellees' complaint, and delayed its efforts to compel arbitration until thirteen months after being served with the complaint. It is also undisputed that, although Keating asserted arbitration as an affirmative defense in his answer, he refrained from further action to enforce the arbitration agreement until six months later, after the discovery deadline.

We need not decide, however, whether delay, without a showing of prejudice to the opposing party, may support a finding of waiver. This is because, as we discuss later in this opinion, the court found that appellees had been prejudiced by appellants' delay in seeking to compel arbitration. *See RTKL,* 95 Md.App. at 144, 620 A.2d 351 (finding it unnecessary to decide whether delay alone can support a finding of waiver where prejudice was also found).

Moreover, the fact that a party desiring arbitration did not assert the affirmative defense of arbitration in its answer is certainly relevant to a court's waiver consideration. *See id.* (citing with approval *City of Niagara Falls v. Rudolph,* 91 A.D.2d 817, 458 N.Y.S.2d 97 (App.Div.1982), in which the court held that a failure to assert the right to arbitration, together with the subsequent resort to discovery and partic- ipation in pre-trial activities, were sufficient to show waiver). The court did not err in giving consideration to appellants' delay in raising the arbitration issue.

In any event, the court based its ruling not merely on appellants' delay in asserting the right to arbitration, but on a much broader set of factors. These included that appellants had filed their petitions to compel arbitration on the eve of

trial, they participated in discovery and motions practice in the other consolidated cases, and they benefitted from discovery by other parties to the instant litigation. In addition, the court found that appellants' delay in seeking to compel arbitration could only be explained by the unfavorable ruling in *Kowalski.*

### C. Discovery in this Case, Other Consolidated Cases, and the Limited Availability of Discovery at Arbitration

 Appellants challenge the court's taking into account their participation in discovery in this and the other consolidated cases. They contend that they participated only in limited discovery and, to the extent that they did engage in discovery practice, those methods would have been available to the parties had they arbitrated the dispute, so appellees were not prejudiced. Appellees refute appellants' contention that the same discovery devices would have been available in arbitration, claiming that NASD's Code of Arbitration Procedure does not compel parties to provide testimonial discovery.

 Whether, and to what extent, a party engages in discovery is material to a court's assessment of whether that party has actively litigated in a case. *RTKL*, 95 Md.App. at 142–43, 620 A.2d 351. *See also Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir.1987) (noting that the extent of a party's trial-oriented activities prior to seeking arbitration is material to a court's determination of prejudice).

In the case *sub judice*, both appellants filed an answer to appellees' complaint and both engaged in some discovery. Commonwealth served appellees with interrogatories and a request for production of documents. Keating served appellees with interrogatories and two requests for production of documents. Although neither appellant noted or participated in the deposition of appellees, both acknowledged having obtained the transcripts of their depositions.

Moreover, it is undisputed that Commonwealth and Keating actively participated in discovery in the earlier consolidated cases. And, Commonwealth conceded that the only factual differences between the consolidated cases and the instant case would derive from appellees' deposition testimony, thereby making extensive discovery in this case duplicative. Given that appellants actively participated in extensive discovery in the consolidated cases that preceded this case, and engaged in several forms of discovery in this case as well, it was proper for the court to consider this factor in its waiver analysis.

■■■ Appellants also aver that discovery would have been similar to what occurred in the litigation had the parties submitted to arbitration, so the appellees suffered no prejudice. We are not convinced that this is so.

With respect to the discovery devices that would have been available to the parties in arbitration, Rule 10321(b)(1) of NASD's Code of Arbitration Procedure states:

> Any party may serve a written request for information or documents ("information request") upon another party 45 calendar days or more after service of the Statement of Claim by the Director of Arbitration or upon filing of the Answer, whichever is earlier. The requesting party shall serve the information request on all parties and file a copy with the Director of Arbitration. The parties shall endeavor to resolve disputes regarding an information request prior to serving any objection to the request. Such efforts shall be set forth in the objection.

NASD's *Discovery Guide* (which was made a part of the record in this case) offers guidance to parties engaged in arbitration and provides parties with Document Production Lists that identify documents they are required to exchange prior to the commencement of proceedings. In addition, the *Discovery Guide* clarifies procedures for supplemental document requests, including interrogatories and depositions. Section V of the *Discovery Guide* explains the procedure for requesting information, stating:

Like requests for documents, parties may serve requests for information pursuant to Rule 10321(b). Requests for information are generally limited to identification of individuals, entities, and time periods related to the dispute; such requests should be reasonable in number and not require exhaustive answers or fact finding. *Standard interrogatories, as utilized in state and federal courts, are generally not permitted in arbitration.*

(Emphasis added.)

Section VI of the *Discovery Guide*, governing depositions, states: "Depositions are strongly discouraged in arbitration. Upon request of a party, the arbitrator(s) may permit depositions, but only under very limited circumstances." The *Discovery Guide* goes on to list four situations in which a deposition is appropriate, none of which is applicable to the case *sub judice.*

Nothing in the NASD Code of Arbitration Procedure or the NASD *Discovery Guide* suggests that interrogatories and depositions would have been available to the parties in this case had they opted to arbitrate rather than litigate. To the contrary, the rules indicate that testimonial discovery in this case only would have been available if the parties had agreed to it. Even then, "depositions are strongly discouraged."

In fact, appellants acknowledge in their arbitration agreement that the discovery devices available in arbitration differ from those in court proceedings. The agreement states: "Pre-arbitration discovery is generally more limited than and different from court proceedings."

Appellants utilized discovery devices in this case that would not have been available to them in arbitration absent appellees' consent. In addition, appellants engaged in extensive discovery in other consolidated cases.[7] The court did not err

---

7. As we explained in Part III.A., the court was permitted to consider appellants' discovery and motions practice in the separate but related consolidated cases adjudicated prior to the instant case.

in taking this into account in determining whether appellants had waived their right to arbitration.

### D. The *Kowalski* Ruling

 The court based its decision that appellants had waived the right to arbitration in part upon the court's conclusion that they sought to compel arbitration only after Commonwealth received the unfavorable ruling in *Kowalski*, another of the consolidated cases. Appellants take issue with this conclusion.

Neither party cites to a Maryland case involving a party who sought to compel arbitration to avoid a possible adverse court ruling. We are informed, however, by several federal cases in which courts considered a party's effort to seek a more favorable forum as a factor that may be considered in the waiver determination. *See Jones Motor Co., Inc. v. Chauffeurs, Teamsters and Helpers Local Union No. 633 of New Hampshire,* 671 F.2d 38, 43 (1st Cir.1982) (observing that "to require that parties go to arbitration despite their having advanced so far in court proceedings before seeking arbitration would often be unfair, for it would effectively allow a party sensing an adverse court decision a second chance in another forum"), *cert. denied,* 459 U.S. 943, 103 S.Ct. 257, 74 L.Ed.2d 200 (1982); *see also Brennan v. King,* 139 F.3d 258, 263–64 (1st Cir.1998) (quoting *Jones Motor* with approval); *Kramer v. Hammond,* 943 F.2d 176, 179 (2d Cir.1991) (explaining that "[p]rejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration"); *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 890 (2d Cir.1985) (noting that the circumstances of the case did not demonstrate that the party sought to compel arbitration to avoid an adverse ruling, but suggesting that it is a valid factor in a court's waiver determination).

In the instant case, the court rejected Commonwealth's explanation that it had delayed efforts to compel arbitration until appellees conceded in their depositions to having signed the arbitration agreement, in light of the previous ruling in

*Kelly.* Furthermore, the court was not convinced by Commonwealth's asserted justification for the delay, because appellants' petitions to compel arbitration were filed only after the ruling in *Kowalski.*

Given the procedural posture of this case and the related cases predating it, appellants likely could have compelled appellees to arbitrate their claim at the outset of this litigation, yet chose not to do so for presumably tactical reasons. The trial court, which is in the best position to assess appellants' actions in this and the other consolidated cases, found that Commonwealth's already tenuous explanation for its delay in asserting the right to arbitration was further strained by the *Kowalski* ruling, adverse to appellants, on the issue of successor liability. The court was not clearly erroneous in so finding. Md. Rule 8–131(c).

### E. Prejudice

 Finally, appellants contend that, even assuming they delayed in asserting the right to arbitration and actively litigated in this case, appellees would not be prejudiced by having the case compelled to arbitration. Appellees reply that they would be prejudiced. They assert that they "would experience undue and unwarranted delay if their claims were compelled to arbitration and would be required to incur undue expense in terms of filing fees and the duplicative expenses in replicating or recreating the pleading and discovery phases of litigation in arbitration."

In the case *sub judice,* the parties argued the issue of prejudice both in the pleadings and at the motions hearing. Based on the evidence and arguments presented, the court concluded in its memorandum opinion that "[i]t would be manifestly inequitable at this juncture to require [appellees] to stay these actions, which are now ready to be tried, and to initiate binding arbitration proceedings against [Commonwealth]."

We have already discussed the delay in appellants' decision to seek arbitration and their engaging appellees in some

discovery. The record before the court supports its finding of prejudice to appellees. Certainly, appellants have failed to show that this finding is clearly erroneous. Md. Rule 8–131(c); *RTKL,* 95 Md.App. at 144, 620 A.2d 351.

### F. The Circuit Court's Waiver Decision

In sum, we discern no error in the court's basing its decision that appellants had waived their right of arbitration upon (1) appellants' conduct in the other consolidated cases, (2) a finding of delay in appellants' assertion of the right of arbitration, (3) appellants' participation in discovery in this case and the other consolidated cases, and the limited availability of discovery at arbitration, and (4) appellants' apparent reaction to the *Kowalski* ruling. Nor was the court clearly erroneous in finding that appellees suffered prejudice as the result of appellants' actions.

We hold, then, that the court correctly determined that appellants waived their right to arbitrate the claims raised by appellees' complaint. We shall not disturb the court's decision.

### IV.

■■■■ Commonwealth contends that the arbitration agreement entered into by appellees is valid and enforceable. Our holding in Part III, however, dictates that the arbitration agreement has become unenforceable with respect to appellees' claims.

We explained the effect of a waiver finding on an arbitration agreement in *The Redemptorists:*

"A finding of waiver ... would mean no more than that the contractual right to compel arbitration had become unenforceable; that right would be regarded as having been voluntarily relinquished and thus treated as though it had never existed. Such a finding would have no bearing, however, upon either the validity or the enforceability of the underlying claims (or the defenses to them). It would mean only that the dispute over the claims would have to be

resolved through the judicial process, in which all arguments for and against the claims could be presented as though there never had been an arbitration agreement."

145 Md.App. at 137 n. 5, 801 A.2d 1104 (quoting *Stauffer*, 54 Md.App. at 668, 460 A.2d 609).

Because appellants waived their right to arbitration, the arbitration agreement is unenforceable with respect to the issues raised in appellees' complaint. Appellees' claims must be litigated in circuit court as if no arbitration agreement ever existed.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**